**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-54

UNITED STATES TAX COURT

JEAN MARIE FONTAYNE AND YVES RAYMOND FONTAYNE, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5492-12S.                                    Filed July 3, 2013.

Jean Marie Fontayne and Yves Raymond Fontayne, pro sese.

<u>Vivian Bodey</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other

case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued a notice of deficiency to petitioners in which he determined a deficiency of $10,414 as well as a section 6662(a) accuracy-related penalty of $2,082.80 for 2008.  Respondent allowed a deduction of $200 for trade publication expenses but disallowed the remainder of petitioners' employee business expense deductions.[1]  Petitioners conceded at trial that they are not entitled to the employee business expense deductions adjusted by respondent.  The issues remaining for decision are whether petitioners are:  (1) entitled to deductions claimed for business expenses reported on Schedule C, Profit or Loss From Business;[2] and (2) liable for a section 6662(a) accuracy-related penalty.

---

[1]It appears from the notice of deficiency and the income tax return that respondent also allowed as an itemized deduction a $500 tax preparation fee.  The original return and the amended return both state that they are "self-prepared".  Respondent, however, failed to adjust the amount and did not request an increased deficiency.

[2]Other adjustments made to petitioners' self-employment tax are computational and will not be discussed.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in California when they filed their petition.

Throughout 2008 both petitioners worked for Vitesse Semiconductor Sales Corp. (Vitesse). Petitioner Yves Raymond Fontayne (Mr. Fontayne) was an employee of Vitesse the entire year. Petitioner Jeane Marie Fontayne (petitioner) worked part time as an independent contractor from her home from January to July 2008. Working from home enabled petitioner to care for her and Mr. Fontayne's three-year-old child. At some point in 2008 petitioner's supervisor retired and his replacement told her to come to work as a full-time employee or he would end her contract and find another person to be a full-time employee. In July 2008, petitioner became a full-time employee of Vitesse.

Pursuant to her agreement with Vitesse, petitioner was required to work from the Vitesse office at least two days a week; because of her desire to work from home and her proven ability to complete her assignments from her home, she was allowed to work from home up to three days per week.

Petitioners had moved into their home in January 2008. Petitioner designated in her house a room with a closet and a bathroom as her office space.

Petitioner did not see clients in her home office, nor did she receive anyone from Vitesse in her home office. At some point in 2008 petitioners decided to make changes to the home office area.

Petitioners' contractor, at their instruction, removed the wall separating the office area from the living room and replaced it with one 14 inches further into the living room, increasing the size of the office while decreasing the size of the living room. Petitioners also improved the home office area by replacing all the carpeting, retiling the bathroom, and by installing an under-the-floor heating system, a programmable thermostat, a central vacuum system, and a fireproof safe in the closet of the home office area. The receipts for the supplies used for the improvements are dated November and December 2008, and the $10,500 check paying the contractor for his work was both dated, and negotiated, in December 2008.

Petitioners timely filed their 2008 Federal income tax return. On their Schedule C petitioners reported a tentative profit of $24,728 with respect to petitioner's consulting work for Vitesse. Also on the Schedule C, petitioners reported expenses of $24,728 for business use of their home relating to her consulting work.

Respondent selected petitioners' 2008 Federal income tax return for examination. On December 20, 2011, respondent issued a notice of deficiency to petitioners disallowing some claimed employee business expenses as personal expenses, reducing the business use of home percentage, and prorating other claimed home office expenses to reflect petitioner's change in employment status from part-time contractor to full-time employee.

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioners did not argue or present evidence that they satisfied the requirements of section 7491(a). Therefore, petitioners bear the burden of proof with respect to the issues in the notice of deficiency.

Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction or credit claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Additionally, a taxpayer

must substantiate all expenses.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

Schedule C Business Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Generally, no deduction is allowed for personal, living, or family expenses.  See sec. 262.  The taxpayer must show that any claimed business expenses were incurred primarily for business rather than personal reasons. See Rule 142(a); Walliser v. Commissioner, 72 T.C. 433, 437 (1979).  To show that the expense was not personal, the taxpayer must show that the expense was incurred primarily to benefit his or her business, and there must have been a proximate relationship between the claimed expense and the business.  See Walliser v. Commissioner, 72 T.C. at 437.  The performance of services as an employee is considered a trade or business for section 162 purposes.  Primuth v. Commissioner, 54 T.C. 374, 377 (1970).

Home Office Expenses

On Schedule C petitioners reported gross receipts from petitioner's work at home of $27,511 and total expenses before business use of their home of $2,783, for a tentative profit of $24,728.  Petitioners claimed on Form 8829, Expenses for

Business Use of Your Home, allowable expenses for business use of their home of $24,728. Petitioners claimed that their home is 3,100 square feet and that 554 square feet, or 17.87% of their home, was used regularly and exclusively for business.[3] Petitioners reported the following direct and indirect expenses on Form 8829:

|  | Direct expense | Indirect expense |
| --- | --- | --- |
| Insurance | --- | $3,708 |
| Repairs and maintenance | $16,501 | 6,654 |
| Utilities | 699 | 13,164 |
| Other expenses | --- | 8,276 |
| Total | 17,200 | 31,802 |

Petitioners reported "allowable operating expenses" of $22,883.[4] Petitioners added to that "allowable casualty losses and depreciation" of $1,845 to arrive at the claimed "allowable expenses for business use of your home" of $24,728.

In the notice of deficiency respondent allowed only $1,113 as business use of home expenses, which included $391 of real estate taxes removed from Schedule A and recharacterized as a business expense due to petitioner's business

---

[3]At trial petitioners conceded their claimed business use of home percentage was overstated and reduced their claimed percentage to 9.9%.

[4]This amount was computed by multiplying the business use of home percentage by the total indirect expenses (17.87% x $31,802 = $5,683) and adding that to the total of the direct expenses ($5,683 + $17,200 = $22,883).

use of the home. Although respondent agrees that petitioner had a home office, respondent asserts that expenses related to the home office should be restricted to the period during which petitioner was a part-time independent contractor. Respondent's adjustments also reflect a change in the percentage of the home used for business as well as a partial or complete disallowance of business expense deductions claimed for repairs and maintenance, utilities, and other expenses.

As a general rule, section 280A(a) denies deductions with respect to the use of a dwelling unit that the taxpayer uses as a residence during the taxable year. Section 280A(c)(1)(A), however, permits the deduction of expenses allocable to a portion of a dwelling unit that the taxpayer uses exclusively and regularly as the principal place of business for a taxpayer's trade or business. In the case of an employee, the exception applies only if the use of the home office is for the convenience of the employer. Id. Any personal use of a room or segregated area will preclude its use in computing depreciation or other allocable expenditures, unless some or all of the use of the room was for the storage of inventory. See Hefti v. Commissioner, T.C. Memo. 1993-128.

Respondent agrees that it was proper for petitioners to deduct home office expenses for the period during which petitioner was an independent contractor. The record shows, however, that petitioner's new supervisor needed petitioner to

take on responsibilities that required additional working hours and a presence at the Vitesse office. Vitesse provided petitioner with an office and required her to work out of the Vitesse office at least two days every week. Petitioner's belief that she was more productive in her home office is of no legal moment. Petitioners offered in support of their position a letter from petitioner's supervisor stating that the split work location arrangement was "beneficial" for Vitesse. But petitioners offered no evidence that Vitesse required or directed that petitioner work from her home. Petitioner was allowed to work from home part-time at her own request and for her own convenience. As a result, petitioners are not entitled to a home office expense deduction for the period August through December 2008.[5]

Petitioners' calculation of the business use of their home originally included square footage for a hallway, an entryway, a room, a bathroom, and a closet. At trial petitioners agreed that their initial claim of 554 square feet was overstated and

---

[5]Petitioners testified that they also used the home office area to have conference calls and do research into whether to begin a real estate business in Florida. The documents provided to corroborate that testimony are largely unsigned and undated, and it is unclear to the Court whether these efforts began, if at all, in 2008. The one document petitioners provided that was signed includes only the signatures of petitioners. There is insufficient evidence that the home office area was used regularly and exclusively as the principal place of business for the real estate business in 2008. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

in fact the home office was 307.5 square feet.  Petitioners initially calculated the square footage using measurements from the outside of the house and the exterior wall measurement from the hallway and the living room.  Petitioners' calculation at trial removes the square footage for the hallway and entryway but is still based on measurements from the hallway and the living room taken outside the home.

The Court agrees with respondent that the bathroom was not used exclusively and on a regular basis for business, nor could it be considered an area where petitioner conducted substantial administrative or management activities of a trade or business.  See sec. 280A(c)(1).  Petitioner received no clients in her home office, nor did she meet with anyone from Vitesse there.  The Court also agrees that petitioner did not use the closet area exclusively and on a regular basis for her work with Vitesse.  Petitioners installed a fireproof safe in that closet in November or December 2008, which they used to store personal items.  Petitioner performed financial audits, and Vitesse provided her with a laptop, a laptop docking station, and the financial information needed for the audits.  There is no evidence that petitioner was required to store any inventory or other items for Vitesse, nor is there any evidence that she used the closet for any reason related to her work for Vitesse.

Although the Court disagrees with petitioners' calculations, with respect to the main office space the Court also finds respondent's position untenable. Respondent's examiner determined that petitioner needed only an area of 9 by 11 feet, or 99 square feet, in order to perform her tasks for Vitesse. It appears to the Court, however, that the interior office space was exclusively and regularly used by petitioner when performing her work for Vitesse as a contractor. While the Court does not agree that petitioners' method of using exterior wall measurements is accurate, the Court finds that respondent's determination of the size of the space petitioner needed to perform her work is arbitrary. On the basis of the stipulated exhibits provided, the Court has estimated the interior office space. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Bearing heavily against petitioners, whose inexactitude is of their own making, the Court finds that the area of their home used for business is 180 square feet.[6]

Direct Expenses

Mr. Fontayne removed some bookcases from the home office and testified that in so doing, he damaged the wall that was subsequently removed and

---

[6]The estimate concludes the interior office dimensions to be 15 by 12 feet, or 180 square feet, which is 5.8% of the home. For the reasons more fully described below, this estimate does not include the additional square footage created by petitioners' moving one office wall 14 inches into the living room.

replaced. At some point in 2008 petitioners decided to make changes to the home office area. The changes included, among other things, expanding the office space by moving one wall 14 inches into the living room area, replacing the carpeting, installing a safe in the closet, and making other major changes to the heating and cooling systems. The record reflects that petitioners purchased the required materials in November and December 2008 and paid the contractor in December 2008. Petitioners' claim that these alterations were necessary for petitioner to be able to work in the home office is self-serving. An under-the-floor heating system is hardly an ordinary and necessary business expense. Further, the Court finds that the alterations were made at the end of 2008, when the home office was no longer her only office and was not maintained for the convenience of her employer.

Petitioners characterize the work done on the office wall that was removed and replaced as a "repair" of damage caused by Mr. Fontayne. It appears to the Court, however, that the expense incurred to remove and replace the wall was not a repair or maintenance expense but was instead a capital expenditure.

No deduction is allowed for expenditures for permanent improvements or betterments that increase the value of any property. Sec. 263. "To repair is to restore to a sound state or to mend, while a replacement connotes a substitution." Jenkins v. Commissioner, T.C. Memo. 1982-407 (removal and replacement of

ceiling was capital improvement). Generally, an expenditure to acquire an asset with a useful business life exceeding one year is treated as a capital expenditure and is not currently deducible as a business expense. Webb v. Commissioner, 55 T.C. 743, 744-745 (1971); Rowell v. Commissioner, T.C. Memo. 1988-410 (improvements to office bathroom were capital expenditures and not currently deductible), aff'd, 884 F.2d 1085 (8th Cir. 1989); Ross v. Commissioner, T.C. Memo. 1984-352 (sign advertising business was capital asset), aff'd without published opinion, 780 F.2d 1028 (9th Cir. 1985). Mr. Fontayne's testimony that the carpeting was "gross" and the damaged wall had mold suggests that replacing these items appreciably prolonged the useful life of the office and added to its value. Likewise, the new heating system, new central vacuum, and new tile in the bathroom are items having a useful life of more than a year and add to the value of the home. As a result, petitioners are not entitled to deduct these expenses as direct expenses related to the business use of the home and must instead capitalize the costs.

Petitioners claimed a direct utilities expense of $699 which was the cost of the monthly home telephone expense. Under section 262(b) the cost of basic local telephone service with respect to the first telephone line provided to a residence is

a personal expense and is not deductible.  We agree with respondent that none of this expense is allowable.

Indirect Expenses

With respect to the indirect repairs and maintenance expense of $6,654, petitioners offered no evidence.  Petitioners did supply the Court with a summary of the expenses that included the date of the repairs, the company that performed the repairs, and the amount of each repair expense.  The Court, however, is unable to determine whether petitioners in fact incurred these expenses or how they may have related to any repair or maintenance of the home.  Therefore, petitioners are not entitled to a deduction for the claimed indirect repairs and maintenance expenses.

Petitioners claimed $3,708 in insurance expenses as an indirect expense on Form 8829.  At trial petitioners reduced their claim to $2,244, which reflected the removal of the claimed automobile insurance expenses.  The examiner agreed that the remaining insurance expenses were generally allowable but should be reduced for the period of petitioner's full-time employment.  The home office was no longer maintained at the convenience of Vitesse once petitioner became a full-time employee, and thus the Court agrees that expenses for the home office were not allowable as of August 2008.

Petitioners claimed indirect utilities expenses of $13,164. At trial petitioners reduced their claim to $6,026, which reflected the removal of the claimed housekeeper expenses, gardener expenses, and homeowners association fees. Respondent allowed $3,743, which included electric, gas, sewer, water, and trash expenses from January through July.[7] The Court agrees that petitioners may not deduct expenses related to the home office for the period after petitioner became a full-time employee.

Petitioners claimed other expenses of $8,276. This amount included expenses for a refrigerator, water filters, a central vacuum, blinds and installation, home inspection, title fees, and escrow charges. Petitioners conceded this item at trial.

Accuracy-Related Penalty

Taxpayers may be liable for a 20% penalty on the portion of an underpayment of tax attributable to negligence or a substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). An understatement of income tax is the excess of the amount of income tax required to be shown on the return for the taxable year over the amount of income tax that is shown on the return, reduced by

---

[7]It appears that these expenses total only $3,636.52; however, respondent allowed the amount and has not requested an increase in deficiency.

any rebate. See sec. 6662(d)(2)(A). An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. See sec. 6662(d)(1)(A).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

The Commissioner bears the burden of production with respect to the applicability of an accuracy-related penalty determined in a notice of deficiency. Sec. 7491(c). In order to meet that burden, the Commissioner need only make a prima facie case that imposition of the penalty is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once that burden is met, the taxpayer bears the burden of proving that the accuracy-related penalty does not apply because of reasonable cause, substantial authority, or the like. Secs.

6662(d)(2)(B), 6664(c); <u>Higbee v. Commissioner</u>, 116 T.C. at 449.  Respondent has met his burden of production for the accuracy-related penalty on the basis of a substantial understatement of income tax because petitioners' understatement of income tax exceeds $5,000, which is greater than 10% of the tax required to be shown on the return.  It also appears petitioners were negligent in the preparation of their return, acknowledging that they overstated the percentage of their home used for business and claimed business expense deductions for personal expenses.

A taxpayer may avoid the application of an accuracy-related penalty by proving he acted with reasonable cause and in good faith.  <u>See</u> sec. 6664(c)(1); <u>see also</u> <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447; sec. 1.6664-4(a), Income Tax Regs.  We analyze whether a taxpayer acted with reasonable cause and in good faith by examining the relevant facts and circumstances and, most importantly, the extent to which the taxpayer attempted to determine his proper tax liability.  <u>See</u> <u>Neely v. Commissioner</u>, 85 T.C. at 947; <u>Stubblefield v. Commissioner</u>, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.  In order for the reasonable cause exception to apply, the taxpayer must prove that he exercised ordinary business care and prudence as to the disputed items. <u>Neonatology Assocs. P.A. v. Commissioner</u>, 115 T.C. 43, 98 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002).

Although petitioner claimed a $500 expense for tax preparation fees and respondent allowed the deduction, all of the tax return documents in the record state that they were self-prepared. Petitioners made no statement about their preparer, if any, and what attempts they made to determine their proper tax liability. As a result, we conclude that petitioners are liable for the accuracy-related penalty.

We have considered all of petitioners' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.
